May it please the Court, my name is James Ashworth, and I represent the Appellants in this matter. I'd like to reserve three minutes for a little movement. An email said, before I get started into the argument, I think it is incumbent upon me to point out that one of the cases that I cited in my reply brief, this has been de-published, the case is Universal Protective Services. It was cited in the reply brief for the position that when another document is integrated into a contract, it has to be a clear and unequivocal integration. The quote that I cited in that particular case is actually a quote from another case that has not been de-published. And so, I would point out that Williams Construction Company v. Standard Pacific, 254 Cal. I was sitting in at 422. That's the exact same citation. And there also is another employment case that cites it in the exact same way. Again, it's AFA v. Integrated Healthcare. But I didn't want the Court to be reliant on a de-published case for me to do a reply brief. I could continue on that subject, unless the Court has a subject that they would like me to jump to before I do so. Well, you've got two different subjects. You've basically got a statute of limitation question for three of your clients, and you've got an averages question for the three others. And to continue on the statute of limitation, which is the contractual issue, I don't think that there is any dispute that the employment application is not a contract. I don't think that anybody is disagreeing on that. The question is, as a matter of fact, there's a California case law that might suggest it's unconscionable. Yes, and I would be more than happy to jump to the unconscionability of this. That may be an easier ground for you. Look, the reason I did what I was doing, you had no contract, I'm not saying I'm not sure. Absolutely, Your Honor. The unconscionability of this is a sliding scale of two factors. That is, a substantive and a procedural unconscionability. And what I mean by a sliding scale is that if we have a particularly high procedural unconscionability, you don't need that high of a substantive unconscionability. So the two really have to be weighed together. And I think that in this particular case, it is really important to look at how this law came about and what the practical effect is. And that is that we have a single sentence in a six-page employment application that has been used now, in some cases a decade later, to claim that that has somehow been integrated into a subsequent employment relationship in a way that limits this action of limitation to six years. In terms of procedure, is there anything that would suggest that something unusual had happened, and that is to say that the job applicants would have retained their application so that they would be on notice of this limitation? There is no evidence, no testimony by any party, that anything was indicated at the time of contracting. In other words, when the employment relationship was established after the application, for anybody to say, suggest, give anything in writing that says, hey, by the way, the conditions of your employment are also contained in your application, so you may want to hold on to that and we'll get you another copy of it. Nothing along those lines had integrated at the time of contracting, which makes it rather odd, really, from a contractual standpoint, that they're claiming that the signing of the application is itself integrating that application into an employment relationship that at that point doesn't exist. Is there an understated authority or proposition that an employment application can be signed after a year? There is not, Your Honor. Respectfully, in spite of the way it was signed, what is happening is, again, establishing some outweighable issues over time. What the courts have determined in California is that an employment application may be used as parole on evidence of the party's contempt for one factor. In other words, very often over time, an employment relationship may change. It may start out as an outward relationship and then it may evolve into more of a contractual relationship based on assertions. Well, one of the factors you can look back at is what was originally established at the time the person submitted an application. But that is parole evidence not integrated into the contract. It's one factor. In the totality of this, I think what we're looking at here, and this really goes to the unconscionability of this, is that when you have something mentioned one time, either what is a 10-year, 8-year, 12-year relationship, it is before the employment relationship has even started. It is once in the early innocence page application, never again mentioned in a handbook, in human resources material at the time of hiring, never again talked about in any way, shape, or form. I think it is clear that the purpose of this is not to get the employees to buy their claims quicker. The purpose of this is to spring them into not, into missing their contractual satisfaction limitation. Well, as we see it, there's a case law that's actually fairly good for you. There was a case in the Martinez case. The six months is too short. I agree. And I know that FedEx has relied heavily on the 9th Circuit case, one of whom I believe is Sultani, for their one case. And I would point out that their 9th Circuit case back in 2001, first of all, was a written contract. I believe it is. I believe the Martinez case as well as the Ellis case have come after Sultani. It has established that California law does not support that. We might have been right in Sultani at the time. We might not be right now. We don't get to make California law. It did not. Sultani was there. He was here. Did you address Sultani's case? There was no serious limitations, probably more contractual limitations in my view. Mr. Holt, when I read his statistics, it made it very clear to me that he took the job at a much lower salary because it wasn't just pretty clearly going to happen. The list had been posted. He knew what his new seniority was going to be. Is that enough to show monetary damage as a result of the alleged fraud? And given what the magistrate judge did, I'm going to assume that there is a triable cause of action for fraud. The answer to your question, Your Honor, is yes. This is a question of fact as to whether or not what Mr. Hart did was reasonable. In other words, if he had been making a, as in this case, around $75,000 up until then, if he now sees that he is going to the following year, the following month, actually, be placed on the extra board, and in this case the extra board means you're on call, you might get some great runs, you might get no runs. You have no idea what you're going to get. Is that the case? Yes. And if I went back to Oregon where I previously did, it was a decision on Mr. Hart. I lost my spot. Yes, Your Honor. I'm in reliance on representations. I go down to Sacramento. I now discover that the representations are true. I now take the rules before the seniority I thought I was getting And if I go back to Oregon, it was the earlier two years that he's not making a payment. That's exactly what the problem is. If he goes back to his position in Oregon, which they actually said he couldn't do, he drops to the bottom of the seniority board there. In either place, he's on call. So he's in a position. Do I go on call either in Kelowna City or up in Oregon for FedEx or do I take a position where I know I'm going to make a certain amount of money? And in his position, he felt that the most prudent course of action for him, and keep in mind, is an obligation to mitigate damages here. He looks for and finds a job making a certain amount of money. He felt the bird in the hand was better than the possible tooth in the bush. But I think it's a question of time for the jury to see where their initial losses were demonstrated. Yes, he was now making, because he felt that he was proven, he had to leave. He was now making a hassle, but he'd been making his head in a swing, in comparison to what he was earning before the move, and then what he was earning after, to show that there was an actual loss. Correct. Yes. You do? Yes, absolutely. He can do that in his W-2s. He can do it by his own testimony. He did it in his application. Did the counsel make comments in his interview with Amethyst that Mr. Farber made more money after he transferred to Kelowna City than he was making before he transferred? Is that what that does? That would include the damages of war? That actually is absolutely true. None of the plaintiffs had any of the problem, in this case, with when they first transferred to Kelowna City. The things weren't even set as represented by FedEx. The issue became this. Any questions on which of the plaintiffs were involved in the counsel? Or was it initially that there were two groups of plaintiffs? All six of them were involved in the exact same vote at the exact same time, but they came from six different places. One of them came from Texas, another one Arizona, two from Oregon, and two from other places in California. Significant votes. Yes. In the case of, and I apologize, I lost my train of thought. I'm just trying to pick on the damages issue. I thought that FedEx demonstrated that Taylor and Flores are making more money after they transferred to Kelowna City than they made before they transferred to Kelowna City. Now I remember where my train of thought was. Yes. When they all transferred in, roughly in the summer of, I believe, at least 2013, they actually all were very happy with their positions, and for six months he remained like that. And a few months before they re-expanded a year, they hear that this service center is now being merged with the Fresno Service Center, and that all of the Fresno Service Center people are, all of my clients had to rescind their seniority date to day one when they moved to Kelowna City. And he's associated, though, with the rescind of his seniority. Yes, and here's why. Because when the Fresno drivers came, they did not have to rescind their seniority. So all of them went to the top of the board, all my clients to the bottom of the board, and suddenly they were all on call. And can you demonstrate that because they were on call, they made less money? Well, in the case of Mr. Barb, he left before the on-call position became, because he was willing to take the chance of making no money. And how do they help him? Well, there is his arm. Well, in the case of the others, well, in Mr. Barb's case, he will testify, the reason I left is because things were not as they were. My four sisters and my reading of portions of the record, some of them were actually doing better than they were before they moved. Well, economically, Mr. Tehela was making approximately the same, but he was now having to work six or seven days a week to make up for those lost wages. I would also point out that there was a company that is not effective. I think you can check in and prepare the family. Yes, it's a really hard time. My other question is, was he earning more than he was before? In a sense, Your Honor, I have to disagree. If a person's job changes in a material matter, such as an example being required to work weekends, those damages, or excuse me, those wages, a jury can determine are not going to be offset against the overall wage. Your defense is that if you look at how many hours are required to make some amount of return, but there are not more damages. Yes. The case is now a court-approved sentence. It's a 2013 case. It is cited in my reply. Where is it from? California. What's the site? 21 Cal Avenue, Florida. 1425 at 1432. In that particular case, it's at page 231, Cal Avenue, Florida. 1425.  At page 1332. Your Honor, this is a discussion. In that particular case, Your Honor, I'm sorry, how important the I-L-L-A-C-O-R-T. I didn't have it right there, Your Honor. In that particular case, what the Court of Appeals in California determined is that if an individual is seen wrongfully terminated, and then they find another job that is significantly different, as an example, in the case of the LaCourta, the significant difference in that job was that it was two or three hours away from his home. So he had to basically go down there for the week and be away from his family. The Court determined that it was reasonable for a jury to decide we do not have to offset those wages. Of course, you could be making exactly the same thing, but we covered all of this because that is a substantial difference. Here's the argument, and we're taking you over, but don't worry about it. Here's the argument I anticipated on the other side, but maybe I shouldn't make the argument for you, but I anticipated the following argument, that Villa-Cortez is not a fraud case. Villa-Cortez is a wrongfully termination that ends in a culturally just case, and there's going to be some language from California cases that says, in fraud cases, you're limited to monetary damages. What's your response? But I'm only talking about monetary damages. No, you're talking about the loss of the job as well. Yes, in part, but what we're talking about here is loss of wages, and as an example, if an individual made something, well, let's say $50,000 before they were terminated, and now they have a job making $40,000. One might argue, well, they've lost $10,000 a year. What the Villa-Cortez case is saying is, if it is the case that the job is substantially different like in Villa-Cortez because they have to travel two or three hours, because they have to stay away and home during the week, the jury can decide to not even consider $40,000 because it is an entirely different job, and you can collect a full $50,000 a year. We are talking about economic damages there. I think that if we're here, that a jury would be allowed to say, hey, fine, maybe for one week's work, you made exactly the same thing, but we're not going to count the wages that are made on Saturday and Sunday because you didn't have to work Saturday and Sunday before. So we're only going to consider the wages that were made Monday through Friday like you made before, and not all those extra hours you have to work is dunked or is lost on the side. In other words, that's the equivalent of picking up a second-rate job that you should be penalized for in order to make ends meet. Do you think you're in the right field? Is that what you think you're doing? Do you think you're in the right field? Any other questions? Good morning. I'm Jason Brooks, and I'm going to leave for a couple of minutes to say that it's absurd to point to California law that its statute of limitations could be shortened by agreement. It's an understatement. It was considered and wrestled and pinned down to the ground in 1809 when, in the Beeson case, the California Supreme Court said it is well-settled proposition of law that the parties to a contract constitute a period of limitation shorter than that fixed by statute. But you do acknowledge that. Well, I think what the courts have said is there are three ways that you can get out from under the specific contractual shortening. One, you can say that it's unreasonable. And so let's look at whether anything reasonable here for some sort of limitation to be applied. It might be considered to be unreasonable to apply this limitation if there were some lack of understanding of the nature of the problem. But in this case, it's a fearful for record that all seats in the plaintiffs' field exactly what they were doing. They weren't doing wrong. They don't understand unless there's some reason. The characteristic of pretty much anybody I know, they have been made for the hand-in-the-coffee of their application. They've been made a serious copy of the application. They have no idea that this contractual limitation period is different from the legal limitation period. They don't know if I have it. They don't know if I get that. They don't have a copy of the application that they signed 10 years earlier. Well, I would respond to that as long as, first, I think it's worthwhile to read the limitation because it is quite clear. No, that's not my point. My point is they don't have it. In California, under Code 232, they are absolutely entitled to request their entire personnel file, which would include their application. So when the six people got together and said, we think it's wrong that these other people are coming in and jumping the line, and they started talking to a lawyer, it is clear that California collected plaintiff and sometimes people need to go back and look at agreements they signed many years ago. But if they didn't hear it, we have our signing, what would trigger their acknowledgement that perhaps there was something in their employment application that might be in with their legal rights? Unfortunately, unfortunately, what the law says is that people are bound to read and understand contracts that they signed. Do you think that this is a matter of when you forfeit your, basically, your right to so-and-so's human rights, so it's so important that the employer would see years ago after the appointment was signed? Well, I think it should be noted that there are other restrictions to voting on the statute of limitations. The statute of limitations cannot be shortened if it is a statutorily unwaivable right. So in all these main power cases, those statutorily unwaivable rights, the statute of limitations can't be shortened. It's only in two areas where the statute of limitations is valid for it to be shortened. In California, I think it is better to put it in an employment application because if somebody is looking for a job, the last thing they're going to know is just any of the conditions in that employment application. Under the case of Elmer Stasmas, it's clear that conditions of employment can be taken or leaven. And this board, California Courts, now issue yearly scores of decisions involving arbitration agreements, out-of-home provisions, all of which are concerned. Are you interested whether or not you're a conservant in this very short limitations period under there in terms of the limitations period? Well, I think that the standard limitations period for fraud, which is all we're looking at here, is the statute is triggered by the discovery of the fraud, and sometimes it's... Is it two to three years, four to three years, 15 to 20 years of fraud? I believe it's three years, but that's because fraud is sometimes hard to see. Well, the fraud that the plaintiffs are complaining of here, they had no problem seeing. Oh, I believe it, but I think you just gave me a non-sequitur. You said that sometimes it's hard to discover the fraud, but the statute of limitations runs from the discovery, so the fact that it's hard to discover is already taken into account. Well, actually, all of the elements of the fraud must be met in order to have a complete claim, and so I understand that. You know, I think, for me, in the issue of beating a dead horse, or rather, the arrow of arsonists is the lens of the barners, but whatever the first metaphor is, the arrow of arsonists is lost in my book on the unpassionability of the six-month campaign. And I can't speak for my colleagues, but I will just leave you there with these things. You're right. Well, the statute of limitations in the employment context is permissible, and several courts are obligated to follow the California Supreme Court's rulings on California law, except for the California Supreme Court, which I do not rely on. The California Supreme Court relates to the Mason and the Davis case, which are both cited in the one case for those cases. They are 1909 and 1920, and they are in a little bit of the world as much. It seems that Alice and Martinus know that Alice and David in the world is a little different. But the Soltani case is a 2002 case, I believe, that cites those very same cases. As you know, in our case, Soltani is the answer, if you can see that. He looked at our case for assertions of California law, and he looked at what was on California law, Washington Times, and the decisions of Martinus and Alice. That's what the question was for. Am I understanding the argument? She's out of the audience. We're not audience. That's true. They brought it over to the fine claim. This is kind of a complicating system, the seniority system, and let me give an example. Actually, there's some secrecy here. They brought it to the bottom, and they're in trouble. The first thing that you look at when you're assessing the fine claim as well as the promise made, and the promise made was that David would have good rights and get it on the ground floor. There was never, ever a promise made that you will make more money working in the same way. Let's go now to the test of the substance of the fraud claim. The Manningham judge said she doesn't find a professional promise, but she finds the fraud in the failure to review it. Yes. That's not the focus of my question. I think the focus of what we are now is what the Manningham judge decided was even though there's a valid fraud claim. There was no damages because of the nature of what these three men did. Could you start with Mr. Harmon? Sure. Mr. Harmon is the person who finds all together. It's the STI who goes back to Oregon. He starts in Oregon. He comes down to Kansas every month to get him found in California because he thinks he's going to get a better job than for the time he does. But after a short period, he starts in Fresno, shows up on the board, and he knows he's in trouble and he's going to drop to the bottom. He says, well, maybe I better go back to Oregon. And FedEx says, go back to Oregon. You're at the bottom, which is not where you were before. So he says, I think I'm in big trouble here because if I stay here, I'm on the bottom of the board. If I come back to Oregon, I'm on the bottom of the board. It's so much worse position than I was before I went to Oregon. And so he says, none of the certificates I have is going to get you another job. That strikes me as straightforward conversation. Straightforward bias. And I don't see that as anything less speculative. Why doesn't he get the evidence for that? Look, there is no evidence in the record. The only evidence in the record of how these plaintiff drivers did after the Fresno drivers came over is what they argued. And in every case, they argued as much or more, not just in comparison to what they argued. For a short period, he did argue what the problem is, that it was for a very short period, and that because these new Fresno drivers are coming in, he is going to earn less than he earned before he came down here. But the record is clear that since plaintiffs knew they all had been in a position that might raise for involuntary fee, there was a risk that people would be involuntarily  I'm sorry, that goes to the final question. I'm asking the damages question. Well, I think there are intertwined, but we should have to look at whether he was whether through the representation or the omission that he was having telling that there was never any promise that he would be at the top of the podium. Please, please, no, you're not changing my point. I was so in for purpose to my question that there's actionable fraud. The magistrate judge said that there was, but the magistrate judge said, but you're not going to get anything because you don't have any damages even assuming fraud. So I'd like all of you to talk about whether or not damages are available assuming fraud. Well, I believe for him to show the damages were available he would have had to have continued to have worked at maintenance. If he says he jumped the gun and said I'm not willing to run the risk that I'm going to maintenance even though I was not certain that I would. Look, if he'd run the risk he's already been shown the part what's going to happen when the federal people come in. He's already been shown that if you stay here and go to the city, you're going to get to the bottom of the board. He asks you about going back to Oregon. If you say you can come back to Oregon, you're at the bottom of the board. Which is a worse position than you were in before. When he has his face and he's been told in no uncertain terms this is a decision, so what's going to happen to you? My response to that would be twofold. First, with respect to being at the bottom of the board, there is no certainty whatsoever that I would actually fall to the bottom of the board. What those mean, the extra board runs mean that they change from day to day. An extra board run is basically the extra work that the company does that's not a fixed route like we're going to go from Sacramento to Medford, Oregon to a Walmart warehouse and we're doing that for a reason. So if he lives through a judgment case, can I assertion that he won't arrest him and if he did that, it jumps out at me that he won't arrest him. I actually don't think he presented any evidence that he would earn less. In fact, the people who stayed, Mr. Taylor and Mr. Flores were in war. It's not because they were driving, but they were in war because they were the loading dogs. And there was never any promise made. What the promise made was that you would have good runs and you would be an on the ground floor. Now, the next three drivers do things to their money. And yet you're fighting with whether there's fraud or not. The fraud that was found was not the bomb. It's the fraud that was found as much as the failure to reveal. My opinion on that is that the failure to reveal, as the Supreme Judge articulated, was the failure to reveal that there would be a large group of people who would be forcibly transferred and would go to the top of the board, even if all of that is true. There's no evidence in the record that these drivers, whenever they're on the top of the board, the middle of the board, or at the very, very very bottom of the board, would make less money. So I don't see that. It's just unclear that the whole case, based on that assumption, that you would go to this low place on that assumption. You're just ignoring the whole case in front of you when you say that. Well, I think the only evidence in the record is what they earned, and the next three drivers does a combination of things. They drive, they work on the dock when there are delays, and when there's extra dock work to be done, they work in the yard, and they get paid for the yard work and the dock work by the hour. They get paid for the driving work by the mile. And so I think it is disingenuous for the plaintiffs to say that we didn't know. The only thing that they can actually sue for in a damages claim is money. This is not a claim for specific performance could be added to the top of the board. This is not a claim for injunctive reviews. I have entitled the most seniority to seek claim for money, and they knew when they moved that a mix of people would ultimately go down in the city in the same way. If this court, if the United Circuit were to open a courthouse in Bakersfield and they opened it up to all the judges in the rest of the United States, come to Bakersfield and be the judge, and the assignments would be given out by seniority, it would be impossible for any one judge to know. If I didn't be at the top or in the middle or the bottom, which you don't, each judge has his own seniority and you don't know what the other judges will do, even if we accepted the proposition that the very same drivers were going down. It's an important point. I've got another question, and that is as to the other two, Flores and Taylor, who are about to say they're a little more, but only because they are making up to the fact that they're on the bottom of the board by working on the loading dock on Saturdays and so on. Your argument is that the only available damage remedy for fraud is based upon monetary loss. The quotation that I see in the magistrate judge's order that says specifically  on page ER 55, including page 27 of the magistrate judge's order, the magistrate judge writes further, and listens and clearly seeks to rescind the contract he or she must sever actual monetary loss to recover on a fraud claim. Molko, and then with a jumpsuit. Well, I read Molko, as does he do. But Molko says the issue that Molko, it's fraud for sure, and the issue that Molko are damages both out-of-pocket and for psychological damages from alleged brain washing. Now, the court doesn't say you can't get damage, there's some brain washing, so that's not a harm in a fraud case, but it says there's no brain washing. How do you respond to it? I think that the remedy for fraud has to be to adhere to the promise made, and there is no dispute with the promise made. I'm talking about damages, not the assumption that there is fraud in the fight, whether there's fraud when you go back down, I guess not. But I was talking about damages, and if there is fraud, both money damages can be any type of money damages, there's no dispute. Now, does the money damages really have any kind of actual harm? In other words, are my projections wrong to respect fraud damages to actual monetary damages? Well, I presume that an out-of-pocket damage is a development damage. In addition to, if these folks are actually earning less money, that's a damage. If they say, well, I moved here, and I wouldn't have moved here otherwise, I presume that's a damage. I'll make this a little bit simpler than what we've got, but essentially I'm trying to figure out, trying to make a problem that we've got. He had a job, and he earned $100. Well, no, he earned $1,000 a week, working 40 hours. Well, as a result of the fraudulent act, he's now earning $1,000, but he has to work 60 hours for it. Is he being damaged? He's earning the same amount of money, but he's got to put in 10 more hours. High damage for if there's fraud. I think the answer to that might be whether there was a problem with the due money. Again, I'm assuming there's fraud, and my only question is are there real damages? And before he was promised that he would get a job for 40 hours a week to earn $1,000. As a result of the fraud, he now finds himself earning $1,000, but working 60 hours. Can he recover? I think he can recover if the promise made was same money for the same amount of work, but not if the promise was made. If the promise paid was fewer 40 hours will pay $1,000. That's the promise. Right. And so that particular circumstance is the promise being made with respect to client market and money market. Both of those promises have to be met if they were intentionally if he did it intentionally to see that there would be fraud. But the fact that he has to work 10 more hours for the same amount of money, does he recover more damages or fraud? Only based on certain types of promises. If I hired somebody from Mr. Ashworth's law firm to come work at my law firm and said, you're going to make a lot more money at my law firm in case you're at my law firm, and he in fact makes a lot more money but he bills $300 more a year and then he says, you defrauded me. You never told me I'd have to work $300 more hours to earn this money. I never promised you that you'd work the same amount of hours. I just promised you the opportunity to earn more money. And I would say that's clearly not a case of fraud. Unless the promise was made is you will earn the same amount of money in the same amount of time. So at this stage what we have is a huge house of saying you will be in such and such a place on the beginning of the rest of the seniority board. Now it's not a forceful promise except that according to what I've suggested now that there was a failure to reveal the material information which would have made this much less likely to happen. The failure to reveal actually turns out to be material because I think of these Fresno guys. So the job that they were intended to rely on at least with respect to money because all you could make from the outside now disappears. But I believe what we did in the record, depending on if I could submit a site to it, is we compared how much they made when they were at the bottom of the board to what the person holding down the board made. And they even made more than that person. But they only did so because they weren't in on the job. They're not trying. They're now having a way, to use my analogy, they're not in on general hours except that they would ever promise that they would earn more money. And the whole idea was that they were coming in and it would be just them in the games. They'd have the run of the candy store to make as much money as they could. And they did. Well given that, I think I got your answer which is it's the nature of the promise or in a way the nature of the fraud rather than if you can show this within the scope of what's caused by the fraud the person has to earn more hours to do it. That's impenetrable depending on the exchange rate. Thank you very much. Now I think we've taken everybody over. Why don't we put two minutes on the clock. Hopefully I was able to make more than one. I just wanted to add very, very quickly that what has not been discussed in terms of the damages for the jury plaintiffs that are involved in the second motion for certiorari judgment is that the move itself is damages. The California Supreme Court in the case of Lazar versus Superior Court stated in that case, the Lazar case is a fraud claim case dealing with the inducement to change employment and that the actual move itself is a form of damages. Here is what part of the and that is that both Mr. Arvin and Mr. Taylor moved from Oregon down to Kettleman City in order to take this job. In the case of Mr. Flores, he moved a shorter distance from Corcoran in the LA area up to Kettleman City but he was able to move seven children and his wife. Was there any evidence as a record regarding the cost of the move? Nope, not the actual cost and I have to admit that that falls somewhat on me. I kind of point out that if you look at these motions, this particular motion for certiorari judgment as you might imagine, the entire motion was about fraud and there was a throw in on damages in the limited end. In the case of Mr. Arvin, literally he was mentioned in a footnote. That's actually what I was asking about. I thought this was the cost of the move. Did you say that's part of the record? It was not part of the record. They did point out that this was not a move that they wanted to make and the hardship on them was to make the move but they did not put financial statements in there. In other words, we had a move in there or it had to pay off a lease or anything along those lines. I have to admit this was a little bit of a throw in issue in the M57SJ. It kind of blew up into the entire case which is rather odd here. But those, the actual inconvenience of the move is itself a guarantee cost.
judges: Fuentes, W. Fletcher, Rawlinson